UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
LIBERTY MUTUAL INSURANCE CO.,

                          Plaintiff(s),  **REPORT AND**
                                                                          **RECOMMENDATION**
        -against-                       CV 10-0449 (JS) (WDW)

HORIZON BUS CO., INC., and NEIL BOYLE,

                          Defendant(s).
----------------------------------------------------------X

**WILLIAM D. WALL, United States Magistrate Judge:**

      This matter was referred to the undersigned by District Judge Joanna Seybert for a report and recommendation as to whether plaintiff's motion for a default judgment, *see* Docket Entry ("DE") [6], should be granted, and, if so, the amount of damages to be awarded. Plaintiff Liberty Mutual Insurance Company ("Liberty") submitted papers in support of its damages claim. Defendants Horizon Bus Co. ("Horizon Bus") and Neil Boyle have submitted papers in opposition to the motion.

      For the reasons set forth below, it is respectfully recommended that the motion for a default judgment be denied as to plaintiff's first cause of action and granted as to the remaining two causes of action, but that damages be awarded only on the third claim and only against defendant Horizon Bus.

### BACKGROUND

      This case involves the attempt by plaintiff Liberty to collect upon a judgment it obtained in an earlier action, CV 07-1477 (DRH) *Liberty Mutual Ins. Co. v. Horizon Coach, Inc.* This action is referred to as the "Collection Action" by Liberty and will be similarly referenced herein. In the Collection Action, Liberty brought suit against Horizon Coach, Inc. ("Horizon Coach"), its principal Clemente D'Alessio, as well as its insurance brokers, The Winfield Group and John

Tomasso. Liberty wrote a business automobile policy for Horizon Coach's business. The basis for the suit was unpaid premiums – Liberty alleged that Horizon Coach misrepresented the distance its buses typically traveled in an effort to secure a lower premium. Liberty sought the difference between the amount of premiums actually paid and the premiums that would have been assessed absent defendants' misrepresentations.

All defendants initially answered the complaint in the Collection Action, and Liberty settled its claims against The Winfield Group and John Tomasso. Horizon Coach and D'Alessio failed to participate in discovery. They were sanctioned for that failure, and ultimately, their answers were stricken, and plaintiff was directed to seek a default judgment against them. D'Alessio declared bankruptcy before plaintiff made its motion and the claims against him were severed from the action. A default judgment was entered against Horizon Coach, and on August 21, 2009, a judgment was entered against it in the amount of $420,787.00, plus pre-judgment interest of $199,900.78, post-judgment interest pursuant to statute, filing fees and a $750 sanction award (the "Judgment").[1]

In the current action, Liberty is seeking to collect upon the Judgment from defendants Horizon Bus and its principal, Neil Boyle. According to the complaint, D'Alessio was deposed on September 9, 2008 during the course of the Collection Action and Liberty "learned for the first time, that all of the assets of Horizon Coach had been transferred to Horizon Bus." Compl. ¶10. D'Alessio was again deposed as part of his bankruptcy proceeding on May 20, 2009, at which time he gave additional testimony regarding the transfer of assets from Horizon Coach to

---

[1] The sanction had been imposed by the undersigned earlier in the litigation for discovery violations, *see* CV 07-1477, Order of 5/27/08, DE [28]. As it had not yet been paid when the judgment was entered, it was added to the final judgment.

Horizon Bus (the "Transfer"). *Id.* ¶¶14-18. The complaint asserts two causes of action against all defendants–fraudulent conveyance pursuant to New York Debtor Creditor Law §276, fraudulent conveyance pursuant to New York Debtor Creditor Law §§273-75–and a claim for piercing the corporate veil against defendant Horizon Bus.

Neither defendant responded to the complaint, and their default was noted by the Clerk of the Court on May 7, 2010. *See* DE [7]. Liberty's motion for default was referred to the undersigned for report and recommendation, and an order directing the filing of supplemental papers was issued. *See* DE [10]. Specifically, plaintiff was directed to file additional papers in support of its damages claims, but was given the option of relying upon its papers already submitted. Defendants were also given the opportunity to submit papers "in opposition to the amounts sought." *Id.* The parties were advised that the report and recommendation would be based upon the paper submissions "unless a hearing is requested, in writing." *Id.*

Defendants submitted papers which will be discussed further below. Liberty submitted a Reply to defendants' submission, but otherwise filed a letter stating that it did not intend to file supplemental papers on damages, and that "[t]he documents submitted in support of Liberty Mutual's motion for a default judgment are sufficient to support its damages claim." *See* DE [16]. Neither plaintiff nor defendants requested a hearing.

## DISCUSSION

**I. Legal Standards**

It is axiomatic that the "effect of a default is to deem as true the well-pled allegations of the complaint that are relevant to liability." *Scafa-Tornabene Art Pub. Co., Inc. v. Pride Prod. Corp.*, 2007 WL 2469453, at *2 (S.D.N.Y. June 4, 2007) (citing *Vt. Teddy Bear Co. v. 1-800*

3

*Beargram Co.,* 373 F.3d 241, 246 (2d Cir.2004)). As to liability, defendants' default "does no more than concede the complaint's factual allegations; it remains the plaintiff's burden to demonstrate that those uncontroverted allegations, without more, establish the defendant's liability on each asserted cause of action." *Said v. SBS Elec., Inc.,* 2010 WL 1265186, at *2 (E.D.N.Y. Feb. 24, 2010), *adopted as mod. by* 2010 WL 1287080 (E.D.N.Y. Mar 31, 2010). A default also "effectively constitutes an admission that the damages were proximately caused by the defaulting party's conduct: that is, the acts pleaded in a complaint violated the laws upon which a claim is based and caused injuries as alleged." *Cablevision Sys. New York City Corp. v. Lokshin,* 980 F. Supp. 107, 111 (E.D.N.Y. 1997).

Defendants' opposition to the default motion does not contain a challenge to service or any other challenge to the jurisdiction of this court, nor do they ask the court to vacate the Clerk's notation of default. Instead, they raise four arguments that go to the adequacy of the pleading and to the availability of damages.

**II. Established Facts and Liability**

Plaintiff asserts three claims in the complaint: two claims under New York Debtor and Creditor Law ("DCL") for fraudulent conveyance, and a third claim to "pierce the corporate veil." As to the fraudulent conveyance claims, Liberty alleges that the transfer of Horizon Coach's assets to Horizon Bus constitutes both actual fraud under DCL §276 and constructive fraud under DCL §273 *et seq*.

A. Actual Fraud under DCL §276

A conveyance is voidable under DCL §276 when it is made with actual intent "to hinder, delay, or defraud either present or future creditors." Since such a claim requires proof of actual

4

intent to defraud, "it must be pled with specificity as required by Rule 9(b)." *Scantek Med., Inc. v. Sabella,* 583 F. Supp. 2d 477, 497 (S.D.N.Y 2008); *see also Atlanta Shipping Corp., Inc. v. Chemical Bank*, 818 F.2d 240, 251 (2d Cir. 1987). This requirement exists primarily "to 'afford defendant[s] fair notice of plaintiff's claim and the factual ground upon which it is based.'" *Mills v. Everest Reinsurance Co.,* 410 F. Supp. 2d 243, 248 (S.D.N.Y. 2006) (*quoting Ross v. Bolton,* 904 F.2d 819, 823 (2d Cir.1990)).

Courts have dismissed claims for fraudulent conveyance where the complaint did not provide particulars or "specify the property that was allegedly conveyed, the timing and frequency of those allegedly fraudulent, or the consideration paid." *United Feature Syndicate, Inc. v. Miller Features Syndicate, Inc.,* 216 F. Supp. 2d 198, 221 (S.D.N.Y.2002); *see also Waite v. Schoenbach,* 2010 WL 4456955, at *6 (S.D.N.Y. Oct. 29, 2010) (dismissing complaint that contained only conclusory allegations and no specific allegations regarding what was conveyed and when it was conveyed); *Mills,* 410 F. Supp. 2d at 248 (stating generally that "'[a]llegations which fail to specify the time, place, speaker and sometimes even the content of alleged misrepresentations,' lack the 'particulars' required by Rule 9(b)." (citation omitted)); *Gindi v. Silvershein*, 1995 WL 347397, at * 6 (S.D.N.Y. June 8, 1995) (dismissing fraudulent conveyance claim where complaint failed to identify the transactions that were allegedly fraudulent or when they took place).

Rule 9(b) also provides that "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). "Due to the difficulty of proving actual intent to hinder, delay, or defraud creditors, the pleader is allowed to rely on 'badges of fraud' to support his case, i.e., circumstances so commonly associated with fraudulent transfers

5

that their presence gives rise to an inference of intent." *In re Sharp Int'l Corp.,* 403 F.3d 43, 56 (2d Cir. 2005) (*quoting Wall St. Assocs. v. Brodsky,* 257 A.D.2d 526, 529, 684 N.Y.S.2d 244, 247 (1st Dep't 1999)). In cases involving a purported fraudulent transfer, the "badges of fraud" include "1) gross inadequacy of consideration; 2) a close relationship between transferor and transferee; 3) the transferor's insolvency as a result of the conveyance; 4) a questionable transfer not in the ordinary course of business; 5) secrecy in the transfer; and 6) retention of control of the property by the transferor after the conveyance." *Lippe v. Bairnco Corp.,* 249 F. Supp. 2d 357, 375 (S.D.N.Y. 2003) (citations omitted), *aff'd,* 99 Fed.Appx. 274 (2d Cir. 2004). Another possible indicator of fraud is "the general chronology of the events and transactions under inquiry." *In re Kaiser,* 722 F.2d 1574, 1582-83 (2d Cir. 1983).

Plaintiff's complaint here does not meet the heightened pleading standards required by Rule 9(b). While Liberty does adequately allege that there was no consideration for the transfer, *see* Compl. ¶¶17, 30, there are simply no allegations about what was conveyed and when it was conveyed. Without these allegations, Liberty has not provided defendants with the requisite notice regarding the basis for its claim for actual fraud.[2] The factual allegations in the complaint are taken almost entirely from deposition testimony given by D'Alessio, the alleged transferor. D'Alessio testified that "I transferred everything over" to Neil Boyle, "I gave him everything . . . Tires and all." *see* Compl. ¶14. There is specific testimony, however, regarding what was <u>not</u> transferred – "The eleven buses owned by Horizon Coach, there was no title transferred because,

---

[2]The complaint does contain allegations regarding the "badges of fraud" related to the transfer of assets. For instance, it claims that D'Alessio and Boyle maintained a close relationship for many years, Compl. ¶¶14, 28, that Horizon Coach and D'Alessio retained control of operations after the transfer, *id.* ¶¶10, 18, 31, and that the transfer was not made in the ordinary course of business, *id.*¶30.

you know, we just kept everything just the way it is and just opened up another corporation. *But the buses are owned by Horizon Coach."* Compl. ¶14 (emphasis supplied). In addition, even though Liberty alleges that the work is now performed by Horizon Bus, D'Alessio testified that Horizon Coach declares the income and files a tax return for it. Compl. ¶18. Significantly, there is no indication in the complaint regarding when the alleged transfer(s) took place.

I find that the complaint fails to comply with the heightened pleading requirements and thus it fails to state a cause of action for fraudulent conveyance under DCL §276. Accordingly, I recommend that the motion for a default judgment be denied as to this cause of action.

B. Constructive Fraud

Liberty's second cause of action is for fraudulent conveyance under DCL §§273-275. A constructive fraudulent conveyance is found under New York law where a transfer is "made without fair consideration under []DCL § 272 and either (1) the debtor is 'rendered insolvent' by the transfer, DCL § 273; (2) the debtor is left with unreasonably small capital for a pending or imminent business transaction, DCL § 274; or (3) the debtor intends or believes that he will incur debts beyond his ability to pay them as they mature. DCL § 275. *In re Singh,* 434 B.R. 298, 309 (Bankr. E.D.N.Y. 2010) (*citing Manshul Constr. Corp.,* 2000 WL 1228866, at *51-52 (S.D.N.Y. Aug. 30, 2000)). Under New York law, fair consideration is given for property when in exchange, "as a fair equivalent therefor, and in good faith, property is conveyed or an antecedent debt is satisfied." DCL §272. Since actual intent to defraud is not an element, this claim is not subject to the heightened pleading requirements of Rule 9(b) of the Federal Rules. *See, e.g., Scantek Med.,* 583 F. Supp. 2d at 497 (no heightened pleading required for DCL §274 constructive fraud claim).

New York law provides that "[e]ach conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors made without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration." DCL §273. Under DCL §273, "if a conveyance is made without fair consideration and the transferor is a debtor who is insolvent or will be rendered insolvent by the transfer, the conveyance is deemed constructively fraudulent." *Capital Distrib. Servs., Ltd. v. Ducor Express Airlines, Inc.,* 440 F. Supp. 2d 195, 203 (E.D.N.Y. 2006) (*citing* N.Y. DCL §273). While the plaintiff has the burden of establishing the lack of fair consideration, where it is shown that a transfer is made without consideration, there exists "a presumption of insolvency that shifts the burden to the defendant to rebut by showing continued solvency after the transaction." *RTC Mortg. Trust 1995-S/N1 v. Sopher,* 171 F. Supp. 2d 192, 199 (S.D.N.Y. 2001). Here, Liberty has adequately alleged that the transfer was made without any consideration, Compl. ¶¶17, 30, and thus there is a presumption of insolvency. As such, I find that Liberty has stated a claim under DCL §273.

A claim under DCL §274 exists where there was no fair consideration and the debtor is left with unreasonably small capital. DCL §275 declares a transfer to be fraudulent if it lacks fair consideration, but requires that the transferor "intend[] or believe[] that he will incur debts beyond his ability to pay as they mature." The complaint alleges that Liberty is a creditor of Horizon Coach, Compl. ¶11, that D'Alessio conveyed assets of Horizon Coach to Horizon Bus, *id.* ¶¶14, 17, that the transfer was made without fair consideration, *id.* ¶¶17, 30, that after the transfer, Horizon Coach was left with unreasonably small capital to conduct business and pay its debts, *id.* ¶37, that Horizon Coach knew it would incur debts beyond its ability to pay, *id.* ¶38,

8

that everything was transferred to Horizon Bus and Horizon Coach ceased operations after the transfer, *id.* ¶14. I find that Liberty has stated a claim under DCL §§274 and 275 as well.

It is recommended that Liberty's motion for a default judgment be granted as to its second claim for constructive fraudulent conveyance.

C. Plaintiff's Third Claim for Relief

The third claim, asserted only against Horizon Bus, is entitled "Piercing the Corporate Veil Against Horizon Bus." This claim is distinct from the DCL claims because it seeks to make Horizon Bus directly responsible for payment of the judgment by shifting liability to it and allegingd that Horizon Bus is responsible for the debts of Horizon Coach. The allegations contained under this heading, however, appear to implicate varying theories. Indeed in its Reply Memorandum, Liberty refers to this as "the claim seeking to hold Horizon Bus liable for the Judgment under the corporate veil/alter ego/successor liability theory." Reply Mem. at 6, DE [14]. For example, at one point Liberty alleges that Horizon Bus is the "alter ego and/or mere instrumentality of Horizon Coach." Compl. ¶41. Still later, Liberty claims that "Horizon Bus is responsible for the debts of Horizon Coach, including the Judgment." ¶44. This argument appears to suggest a successor liability theory of recovery. I will examine the theories pled in the complaint to determine whether Liberty has stated a claim under either rationale.

    i. Successor Liability

Liberty alleges that Horizon Bus is responsible for the debts of Horizon Coach. In general, a successor corporation does not ordinarily become liable for the predecessor's debts. *See Cargo Partner AG v. Albatrans, Inc.,* 352 F.3d 41, 45 (2d Cir. 2003)(citation omitted). There are, however, "four exceptions where the successor corporation will be liable for the

9

predecessor's debts: '(1) a buyer who formally assumes a seller's debts, (2) transactions undertaken to defraud creditors, (3) a buyer who de facto merged with a seller; and (4) a buyer that is a mere continuation of a seller.'" *Silverman Partners LP v. Verox Group,* 2010 WL 2899438, at *3 (S.D.N.Y. Jul. 19, 2010) (*quoting Cargo Partner AG,* 352 F.3d at 45 (citation omitted)). The complaint alleges sufficient facts to establish that the transfer of assets from Horizon Coach to Horizon Bus was undertaken to defraud creditors. As discussed *supra,* Liberty has alleged sufficient facts to state a claim that a fraudulent conveyance occurred. Accordingly, "it can be inferred that the transaction was undertaken to defraud creditors and the second exception for imposing successor liability applies." *Silverman Partners,* 2010 WL 2899438, at *6; *see also Donald Dean & Sons, Inc. v. Xonitek Sys. Corp.,* 656 F. Supp. 2d 314, 330 & n.30 (N.D.N.Y. 2009) (denying motion to dismiss successor liability claim where plaintiff had adequately pled fraudulent conveyance).

In addition, plaintiff has established that successor liability could also be established under one of the other grounds such as the "mere continuation" or "de facto merger" exceptions. A de facto merger exists "when a transaction, although not in form a merger, is in substance 'a consolidation or merger of seller and purchaser.'" *Cargo Partner AG,* 352 F.3d at 45 (*quoting Schumacher v. Richards Shear Co.,* 59 N.Y.2d 239, 245, 464 N.Y.S.2d 437, 440, 451 N.E.2d 195, 198 (1983)). "To determine whether such a '*de facto* merger' or 'mere continuation' of the predecessor's business has occurred, courts consider (1) continuity of ownership; (2) cessation of ordinary business by the predecessor; (3) assumption by the successor of liabilities ordinarily necessary for continuation of the predecessor's business; and (4) continuity of management, personnel, physical location, assets, and general business operation." *Nettis v. Levitt,* 241 F.3d

10

186, 193-94 (2d Cir. 2001)(citations omitted), *overruled on other grds by Slayton v. American Exp. Co.,* 460 F.3d 215 (2d Cir. 2006). Liberty has alleged that Horizon Bus is the "mere continuation of the business of Horizon Coach," that both its customers and employees remained the same, Compl. ¶¶16, 18, that Horizon Bus continued to use the same buses, and the same corporate books, office space, and telephone number, *id.* ¶16, and that Horizon Coach and its principals retained control over the assets and operations transferred to Horizon Bus, and dominated the latter's operations. ¶42. The two companies allegedly shared "facilities, customer lists, employees, general business operations, buses, and telephone numbers." ¶43. I find that the complaint sets forth a claim for successor liability under the de facto merger/mere continuation of business exceptions as well.

As Liberty has adequately pled a claim for successor liability on several grounds against Horizon Bus, I recommend that Horizon Bus should be held liable for the Judgment against Horizon Coach.

ii. Alter Ego/Piercing the Corporate Veil

New York does not recognize the alter ego/pierce the corporate veil doctrine as an independent cause of action. *See Network Enter., Inc. v. Reality Racing, Inc.,* 2010 WL 3529237, at *4 (S.D.N.Y. Aug. 24, 2010). "The concept is equitable in nature and assumes that the corporation itself is liable for the obligation sought to be imposed. Thus, an attempt of a third party to pierce the corporate veil does not constitute a cause of action independent of that against the corporation." *Id.* (*quoting Morris v. N.Y. State Dep't of Taxation & Fin.,* 82 N.Y.2d 135, 141, 603 N.Y.S.2d 807, 623 N.E.2d 1157 (1993) (citation omitted)). Generally, piercing the corporate veil/alter ego arguments are made to disregard the corporate entity to find the owners

11

liable for the debts of the corporation. *See Morris,* 82 N.Y. 2d at 141, 603 N.Y.S.2d at 810, 623 N.E. 2d 1157 (piercing the corporate veil is not a separate cause of action, but rather "it is an assertion of facts and circumstances which will persuade the court to impose the corporation obligation on its owners.").

Before the court may disregard the corporate entity and pierce the corporate veil, "it must be shown that (1) the alleged alter ego exercised complete domination over the corporation with respect to the transactions at issue; and (2) that this domination was used to commit a "fraud or wrong" against the plaintiff, which resulted in plaintiff's injury." *Atateks Foreign Trade Ltd. v. Private Label Sourcing,* 2009 WL 1803458, at *14 (S.D.N.Y. June 23, 2009), *aff'd,* 2010 WL 4923942 (2d Cir. Dec. 6, 2010). "[P]urely conclusory allegations cannot suffice to state a claim based on veil-piercing or alter-ego liability, even under the liberal notice pleading standard." *In re Currency Conversion Fee Antitrust Litig.,* 265 F. Supp. 2d 385, 416 (S.D.N.Y. 2003); *see also Waite,* 2010 WL 4456955, at *3; *Kalin v. Xanboo, Inc.,* 526 F. Supp. 2d 392, 404 (S.D.N.Y. 2007).

Here, it is unclear from the complaint which corporate entity Liberty wishes to "pierce" and what individual or corporation it wants to hold liable. Liberty merely alleges that "Horizon Bus is the alter ego and/or mere instrumentality of Horizon Coach." Compl. ¶41. Based on this wording, it appears that Liberty is alleging that Horizon Coach is the so-called "dominating" force and that the corporate veil of Horizon Bus should be pierced to get at Horizon Coach. Liberty also alleges that D'Alessio "was truly in charge of the operations of Horizon Bus," suggesting that he is the man behind the curtain. As Liberty already has a judgment against Horizon Coach, and neither D'Alessio nor Horizon Coach are parties to this action, piercing the

corporate veil as to them makes no sense. To the extent Liberty wishes to pierce the corporate veil of Horizon Bus to reach the assets of Neil Boyle, the complaint is similarly flawed. First, based on the heading for this claim, Liberty is not seeking to hold Boyle liable under this theory. Moreover, if Liberty were seeking to hold Boyle liable, it hasn't allege any facts that would show that Boyle exercised domination over the companies.

As to any piercing the corporate veil/alter ego theory, the complaint does not comport with the pleading requirements of Rule 8 that the complaint provide a short and plain statement of the claim showing that the pleader is entitled to relief. Accordingly, I recommend that default judgment not be granted on this theory.

**III. Damages**

A default constitutes an admission of all well-pleaded factual allegations in the complaint, except those relating to damages. *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.,* 973 F.2d 155, 158 (2d Cir. 1992). Once liability has been established, the court must satisfy itself that it is able to ascertain damages to a "reasonable certainty." See *Credit Lyonnais Sec. (USA), Inc. v. Alcantara,* 183 F.3d 151, 155 (2d Cir.1999) (*quoting Transatl. Marine Claims Agency, Inc. v. Ace Shipping Corp.,* 109 F.3d 105, 111 (2d Cir.1997)). To establish damages upon a default, the movant need only prove that the "compensation sought relate[s] to the damages that naturally flow from the injuries pleaded." *Greyhound,* 973 F.2d at 159. An evidentiary hearing is not required so long as there is a basis for the damages awarded. *Transatlantic Marine,* 109 F.3d at 111 (citations omitted).

Based on the above analysis, Liberty may be entitled to recover damages under its second and third claims, for constructive fraud and for successor liability, respectively. I will examine

the availability of damages under both claims.

A. Remedy under NY DCL

The DCL does not provide as a remedy a direct collection from the transferee of the judgment against the transferor. While the existence of an unsatisfied judgment is necessary to bringing a claim under DCL 273a, that judgment "is not a sword that can be directly turned upon third-party transferees. The proper remedy in a fraudulent conveyance claim is to rescind, or set aside, the allegedly fraudulent transfer, and cause the transferee to return the transferred property to the transferor." *Grace v. Bank Leumi Trust Co.,* 443 F.3d 180, 189 (2d Cir. 2006); *see also Capital Distrib. Servs.,* 440 F. Supp. 2d at 204 (noting that "[g]enerally, the creditor's remedy in a fraudulent conveyance action is limited to reaching the property which would have been available to satisfy the judgment had there been no conveyance.").

Plaintiff's remedy is not always limited to return of the transferred property. In certain cases, money damages may be awarded, but the amount of the award is limited to the value of the fraudulently transferred assets. "Although a creditor may obtain a money judgment against a transferee who received a fraudulent conveyance from the debtor, the liability of a transferee . . . is limited to the value of the property that was fraudulently conveyed." *Cadlerock Joint Venture, L.P. v. Minsky,* 2010 WL 1740422, at *2 (E.D.N.Y. Apr. 30, 2010); *see also Neshewat v. Salem,* 365 F. Supp. 2d 508, 521 (S.D.N.Y. 2005) (finding that where fraudulent conveyance could not be set aside, money damages could be awarded, but "limited to the extent of the value of the assets transferred"), *aff'd*, 194 Fed.Appx. 24 (2006); *United States v. Mazzeo,* 306 F. Supp. 2d 294, 321 (E.D.N.Y. 2004) (awarding plaintiff "the equivalent of a money judgment in the amount of the contemporaneous fair market value of each transfer"). Those cases do not, however,

suggest that plaintiff is entitled to recoup a money judgment in an amount greater than the value of the transferred assets. Indeed, it would be inequitable to hold a transferee liable for an amount in excess of the property he received. I find that Liberty is entitled to an award of money damages up to the amount of the transferred assets.

Unfortunately, Liberty has presented neither testimony nor documentary evidence regarding the value of the assets. Indeed, it does not even identify what the assets may be. Plaintiff was specifically given the opportunity to supplement its papers and to request a hearing, but it wrote to say that its default papers would suffice and never affirmatively asked for a hearing. Where a plaintiff is given ample opportunity to provide evidence of its damages and fails to do so, no damages can be awarded. *See Gabr Int'l Trading Corp. v. Birdsall,* 2009 WL 595605, at *3 (E.D.N.Y. Mar. 6, 2009) (declining to award damages based on submission of conclusory affidavit without supporting evidence); *Bricklayers Ins. & Welfare Fund v. David & Allen Contracting, Inc.,* 2007 WL 3046359, at *4 (E.D.N.Y. Oct. 16, 2007) (no award where decision was to be rendered on paper submissions, no party objected to that procedure, and plaintiff submitted only an attorney affidavit with no personal knowledge of the facts).

Liberty suggests that defendants bear the burden of establishing the value of the assets since they have "absolute control over any evidence of the value of the transferred assets and goodwill." Reply. Mem. at 6. The cases cited by Liberty, however, do not support the proposition that defendants must prove plaintiff's damages. Instead, the cases concern situations where the nature and value of the *consideration* are in the transferee's control. None of the cases cited support a legal rule that upon a default, the burden of proof of establishing damages shifts to the defendants. As I am unable to reasonably ascertain the damages, I cannot recommend an

15

award of damages on the constructive fraudulent conveyance claim.[3]

### B. Remedy under Successor Liability

I have recommended that the motion for a default judgment be granted as to Liberty's claim that Horizon Bus is Horizon Coach's successor and, as such, is liable for the judgment entered against Horizon Coach. Accordingly, it is recommended that judgment be entered against Horizon Bus in the amount of the underlying judgment, $621,787.78, plus post-judgment interest pursuant to 28 U.S.C. § 1961(a) from August 21, 2009 forward.

## OBJECTIONS

A copy of this Report and Recommendation is being sent to counsel for the plaintiffs by electronic filing on the date below. Any objections to this Report and Recommendation must be filed with the Clerk of the Court within 14 days. *See* 28 U.S.C. §636 (b)(1); Fed. R. Civ. P. 72; Fed. R. Civ. P. 6(a) and 6(d). Failure to file objections within this period waives the right to appeal the District Court's Order. *See Ferrer v. Woliver,* 2008 WL 4951035, at *2 (2d Cir. Nov. 20, 2008); *Beverly v. Walker,* 118 F.3d 900, 902 (2d Cir. 1997); *Savoie v. Merchants Bank,* 84 F.3d 52, 60 (2d Cir. 1996).

Dated: Central Islip, New York
February 22, 2011

/s/ William D. Wall
WILLIAM D. WALL
United States Magistrate Judge

---

[3] Even if an award under these circumstances were appropriate, I have reviewed defendant Boyle's arguments that plaintiff failed to sufficiently allege that the corporate veil of Horizon Bus be pierced to reach him and find that the argument has merit. The complaint is devoid of any factual allegations that would support piercing the corporate veil of Horizon Bus to hold Boyle individually liable.